UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

TODD ROBBEN,

Plaintiff,

v.

CARSON CITY, NEVADA, *et al.*,

Defendants.

Case No. 3:13-cv-00438-MMD-VPC

ORDER

## I. SUMMARY

Before the Court is Defendants' Motion for Summary Judgment ("Motion"). (Dkt. no. 31.) Plaintiff has responded by filing an opposition, emergency ex parte requests for extensions of time and supplements to said requests, and a motion to strike Defendants' alleged false statements.[1] (Dkt. nos. 33, 35, 38, 44.) Defendants have filed a reply in support of their Motion and a response to Plaintiff's motion to strike. (Dkt. nos. 36, 40.) Plaintiff replied to support his motion to strike. (Dkt. no. 42.) Defendants' Motion is granted in part and denied in part without prejudice to Defendants, who are given leave to file a renewed motion. Plaintiff's motion to strike is denied.

## II. BACKGROUND

### A. Allegations

This case arises from Plaintiff's attempt to effectuate service of process that apparently did not proceed as planned. Plaintiff alleges that the target of the process

[1]Plaintiff's ex parte requests were denied. (Dkt. nos. 39, 43.)

service attempted to evade service, and instead filed a complaint with the Carson City Sheriff's Office against Plaintiff for stalking and harassment. As a result, Plaintiff was arrested and prosecuted, and arrested multiple times during the course of the prosecution, all allegedly in violation of his constitutional rights.

Plaintiff asserts sixteen claims under 42 U.S.C. §§ 1983 and 1985 and state common law. Plaintiff names Carson City, the Carson City Department of Alternative Sentencing ("DAS"), and certain individuals in their official and individual capacities, including DAS officials, Carson City Justice Court Judge John Tatro ("Judge Tatro"), Carson City District Attorney Neil Rombardo ("DA") and Deputy District Attorney Travis Lucia (collectively referred to as "DA Defendants"), and a Carson City Jail doctor.

**B. Procedural History**

Plaintiff, proceeding *pro se*, initiated this action on August 14, 2013. (Dkt. no. 1.) The Court set a case management conference for December 13, 2013, and ordered the filing of a joint case management report by December 4, 2013. (Dkt. no. 12.) Defendants filed a proposed discovery plan and scheduling order and its case management report. (Dkt. nos. 13, 14.) Plaintiff did not appear at the December 13, 2013, case management conference. (Dkt. no. 16.) The Court approved the proposed discovery plan and scheduling order, establishing, among other deadlines, the deadlines for amending the pleadings (January 13, 2014), conducting discovery (April 12, 2014), and filing dispositive motions (May 12, 2014). (Dkt. no. 15.)

On January 21, 2014, Plaintiff filed a notice of change of address and a motion to stay proceedings. (Dkt. no. 23.) Plaintiff claims he was arrested by "Defendant(s)" and held in the Carson City jail and requested a stay pending his release.[2] (*Id.*) On February 11, 2014, the Court denied his motion, finding that he may proceed with this case while incarcerated. (Dkt. no. 28.)

///

[2]Plaintiff also claimed that "[t]he Defendant has also stolen Plaintiff's discovery, i.e., computer, papers, etc." (Dkt. no. 23.) Plaintiff offers no support for this allegation.

On April 29, 2014, Plaintiff filed a notice of change of address, informing the Court of his release from custody and his new address. (Dkt. no. 30.)

On May 12, 2014, the deadline for filing dispositive motions, Defendants filed their Motion. Plaintiff's motion to strike asks the Court to strike Defendants' Motion on the basis that the Motion contains false statements.[3]

## III. LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). Courts must also liberally construe documents filed by *pro se* litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

///

---

[3]This is not a proper basis to strike the entire Motion. Plaintiff's motion to strike (dkt. no. 38) is denied.

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (citation and internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

Defendants seek summary judgment on all claims. In response, Plaintiff requests an extension of the deadlines to amend pleadings and to conduct discovery, leave to amend based on recent developments that arose since the Complaint was filed, and a continuance under Federal Rule of Civil Procedure 56(d). The Court will first address Plaintiff's request for an extension of the deadlines to file amended pleadings and to conduct discovery.

### A. Plaintiff's Requests for Extensions and Leave to Amend

The deadline for amending pleadings expired on January 13, 2014, while the discovery deadline ended on April 12, 2014. (Dkt. no. 15.) Plaintiff filed his response requesting an extension of time on June 2, 2014. (Dkt. nos. 33, 34.) Although courts liberally construe *pro se* proceedings, Plaintiff's *pro se* status does not relieve him of

following procedural rules. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925-28 (9th Cir. 2012)). Accordingly, Plaintiff must demonstrate that he failed to move to extend these deadlines because of excusable neglect. Fed. R. Civ. P. 6(b)(1)(B); LR 6-1(b).

Plaintiff offers as the reason for his delay his incarceration in the Carson City Jail from November 5, 2013, until approximately April 11, 2014. (Dkt. no. 33 at 3.) He further claims that he was unable to manage this case "when he was in the Carson City jail on 23 hour lockdown with no access to a law library." (*Id.* at 6.) Plaintiff, however, filed a motion to stay this case on January 21, 2014, while he was in custody (dkt. no. 23); about a week later, on January 30, 2014, Plaintiff filed an opposition to Defendants' motion to screen his Complaint (dkt. no. 26). Plaintiff does not appear to have faced impediments to filing documents in this case while he was in custody and allegedly on 23-hour lockdown.[4] As the Court noted in denying his request to stay this case, Plaintiff could have proceeded with prosecuting this case while in custody. Plaintiff does not explain why he was able to file a motion to stay and a notice of change of address at that time, but not a motion to seek an extension of the deadlines. In his opposition to Defendants' motion to screen his Complaint, Plaintiff claimed that he was not able to properly respond because "there is no law library computer, printer and other resources." (Dkt. no. 26.) However, the lack of such resources did not deter Plaintiff from opposing Defendants' motion to screen. Plaintiff does not explain why he was not able to file a simple request for extension without the benefit of legal resources. The fact that Plaintiff filed several documents while in custody belies his claim of being on 23-hour lock down for the duration of his time in custody and his claim of a lack of resources. Moreover, Plaintiff also fails to explain why he did not seek to extend the

[4]On December 19, 2013, another individual filed a motion to stay on Plaintiff's behalf. On January 3, 2014, Defendants moved to strike that motion to stay as improperly filed. (Dkt. no. 18.) Plaintiff then filed his own motion to stay on January 21, before the Court determined whether to strike the improperly filed motion to stay. (Dkt. nos. 23, 25.) Plaintiff was evidently monitoring the filings in this case while he was in custody.

deadlines immediately upon his release from custody on April 11, 2014. In fact, Plaintiff filed a notice of change of address on April 29, 2014. (Dkt. no. 30.) But Plaintiff waited until almost two months after his release from custody — and after Defendants filed their Motion — to seek an extension of the deadlines.

Under these circumstances, the Court cannot find that Plaintiff's failure to act was because of excusable neglect. Plaintiff's request to extend the deadlines to file amended pleadings and for discovery is denied. For the same reasons, Plaintiff's request for leave to amend is also denied.

**B. Plaintiff's Rule 56(d) Request**

Under Rule 56(d), if, in response to a summary judgment motion, "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the Court may defer consideration of the motion, deny the motion, allow the parties time to complete additional discovery, or grant other appropriate relief. Fed. R. Civ. P. 56(d). The party requesting additional time to conduct discovery to oppose summary judgment "must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (discussing former Rule 56(f), which was carried forward as Rule 56(d) in 2010 amendments to the Federal Rules of Civil Procedure). If the nonmovant does not satisfy these requirements, the Court may rule on summary judgment without granting additional discovery. *Id*.

Relief under Rule 56(d) is not available to Plaintiff. Rule 56(d) provides a mechanism for the nonmoving party to avoid summary judgment when he needs to discover affirmative evidence necessary to oppose the motion. *See Family Home*, 525 F.3d at 827. Rule 56(d) thus covers the situation where a dispositive motion was filed while the parties are still in the midst of discovery. Here, the discovery period closed a month before Defendants filed their Motion. Furthermore, setting aside the expiration of

the discovery deadline, Plaintiff does not explain what facts he hopes to discover, or that those facts will raise an issue of material fact. Plaintiff alludes to additional developments that have occurred since he initiated this action, not what sought-after facts are essential to defeating summary judgment. Plaintiff thus has not met his burden in seeking relief under Rule 56(d).

**C. Defendants' Motion**

The Court's denial of Plaintiff's various requests does not result in automatic adjudication of the entire Motion. In light of Plaintiff's *pro se* status, Plaintiff should be given the opportunity to fully respond to the Motion. Plaintiff's opposition brief and supplements focus primarily on addressing his extension and continuance requests, not on addressing the arguments in the Motion. Moreover, Plaintiff's last supplement raises an issue that appears to undermine one of Defendants' grounds for seeking summary judgment, and that will require further briefing.

In his last supplement to his opposition, Plaintiff submitted a copy of an interlocutory order ("Dismissal Order") that appears to vacate the judgment of conviction on which Defendants relied in their Motion.[5] (Dkt. no. 44 at 8-17.) The Dismissal Order is not authenticated and it is not clear to the Court whether the Dismissal Order is authentic. Defendants did not respond to seek leave to address the Dismissal Order. In their Motion, Defendants list as an undisputed fact Plaintiff's plea agreement relating to the charges of breach of the peace, contempt of court and violations of his pre-trial release conditions, and the denial of Plaintiff's subsequent motion to withdraw his plea. (Dkt. no. 31 at 4-5.) Defendants argue that Plaintiff's plea bars him from bringing some of his claims, including claims for malicious prosecution, conspiracy, false arrest and imprisonment, defamation, and abuse of process. (*Id.* at 12, 24-28.) However, the Dismissal Order appears to strip Defendants of this argument. Under these

[5]The Dismissal Order states, in pertinent part, that "[t]he Judgment of Conviction and, including the official record of the Revocation of Deferred Sentence may be and hereby are VACATED. (The sentence cannot stand without the underlying judgment), at least for the time being." (Dkt. no. 44 at 14.)

circumstances, the Court finds that it would be inappropriate to adjudicate Defendants' Motion without additional briefing, except for those claims that may be disposed of as a matter of law independent of the Dismissal Order. The Court finds that summary judgment in favor of Judge Tatro and the DA Defendants is warranted as a matter of law even if the Court accepts Plaintiff's allegations as true. For this reason, the Court will address the claims against Judge Tatro and the DA Defendants.[6]

**1. Claims Against Defendant John Tatro**

Defendants argue that Judge Tatro is entitled to absolute immunity because the claims are based on Judge Tatro's adjudication and handling of Plaintiff's criminal case. The Complaint alleges that Judge Tatro violated Plaintiff's constitutional rights as follows: authorizing Plaintiff's arrest after Plaintiff was charged on August 15, 2012, and authorizing two subsequent arrests after increasing bail and determining that Plaintiff violated his pre-trial release conditions; holding a hearing in response to the DA's ex parte motion and making a determination about Plaintiff's mental health; and finding that Plaintiff violated his pre-trial release conditions and modifying these conditions. The Complaint further alleges that on April 24, 2013, Judge Tatro was disqualified from presiding over Plaintiff's criminal case for "actual bias and prejudice against Plaintiff."[7]

[6]Defendants also argue that DAS is a political subdivision of the State of Nevada and is not a suable entity. However, Defendants' cited decision of *Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir. 2001), does not support Defendants' argument. In that case, the Ninth Circuit Court of Appeals rejected the Los Angeles County Sheriff Department's argument that it was not a suable entity. *Id.* at 555-56. Moreover, Defendants suggest that DAS is a political subdivision of the state of Nevada, but offers no evidence to support this assertion. DAS's name alone suggests that it may be a unit of Carson City. While state agencies or departments are not "persons" under 42 U.S.C. § 1983, municipalities are "persons" and may be sued under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). The Court thus cannot find that DAS is not a suable entity as a matter of law without undisputed evidence supporting the contention that DAS is a political subdivision of the state.

[7]In the same paragraph, Plaintiff asserts that Judge Tatro "wrongfully accused Plaintiff of shooting his front door in December 20, 2012. Plaintiff was fully cleared of any involvement in said shooting by Carson City Sheriff Investigator Dan Gomez." (Dkt. no. 1 ¶ 89.) Plaintiff's claims do not relate to this alleged incident. Plaintiff's opposition brief, however, appears to suggest that further factual developments supporting amendment of his Complaint relate to this shooting incident. Defendants assert that Plaintiff's November 9, 2013, arrest related to new charges for criminal offenses *(fn. cont…)*

(Dkt. no. 1 ¶ 89*.)* However, even accepting these allegations as true, Plaintiff cannot pursue his claims against Judge Tatro because he is entitled to judicial immunity.

It is well established that judges who perform judicial functions are immune from suit. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* at 11 (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). In *Mireles*, the United States Supreme Court explained the rationale for giving judicial officers absolute immunity:

> Although unfairness and injustice to a litigant may result on occasion, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."

*Id.* (quoting *Bradley v. Fisher,* 13 Wall. 335, 347, 20 L. Ed. 646 (1872)).

Plaintiff's claims against Judge Tatro are based on challenges to his performance of his judicial functions in the handling of Plaintiff's criminal case. Judge Tatro is therefore entitled to judicial immunity even if, as Plaintiff alleges, Judge Tatro harbored actual prejudice against Plaintiff. *See Mireles*, 502 U.S. at 11.

### 2. Claims Against the DA Defendants

The DA Defendants are similarly entitled to absolute immunity. The gist of Plaintiff's claims against the DA Defendants involved their handling of the prosecution of Plaintiff's criminal case,[8] how they decided to charge Plaintiff, their decision to seek Plaintiff's arrests and increase his bail, and their involvement in modifying the conditions of Plaintiff's pre-trial release. These allegations, even if true, all relate to conduct associated with the prosecution of Plaintiff's criminal case.

---

*(…fn. cont.)*
stemming from alleged threats made toward Judge Tatro and his family members. (Dkt. no. 18 at 2.) Since the Court denies leave to amend, Plaintiff can only proceed on the claims alleged in his Complaint, not claims arising out of a subsequent criminal charge.

[8]Plaintiff alleges that the DA dismissed Carson City Deputy Sheriff Bob Guimont's recommendation of "alleged 'harassment'" and instead "trumped up charges of alleged 'battery' 'assault' and 'breach of the peace.'" (Dkt. no. 1 ¶ 29.)

Prosecutors are absolutely immune from suits brought under 42 U.S.C. § 1983, as they are from suits based on common law, for actions that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976). Actions that fall within this contour include the decision as to which suits to bring and how to conduct these suits. *Id.* at 424-25. In a more recent decision, *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009), the United States Supreme Court recapped previous cases involving the scope of a prosecutor's absolute immunity. For example, the Court noted that it has found that absolute immunity "applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application," but does not apply when a prosecutor "engaged in other tasks, say, investigative or administrative tasks," or "gives advice to police during a criminal investigation." *Id.* at 342-43 (citations omitted). The Court in *Imbler* adopted Judge Learned Hand's reasoning in extending absolute immunity to prosecutors:

> As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end to better leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

*Imbler*, 424 U.S. at 428 (citations and internal quotation marks omitted).

In this case, the absolute immunity afforded prosecutors bars Plaintiff's claims against the DA Defendants. Plaintiff's allegations involved these Defendants' initiation and handling of his criminal case. Plaintiff cannot assert claims against the DA Defendants based on their conduct even if Plaintiff's allegations are true.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Defendants' Motion for Summary Judgment (dkt. no. 31) is granted with respect to the claims asserted against Defendants John Tatro, Neil

Rombardo, and Travis Lucia. Defendants' Motion is denied without prejudice with respect to the remaining Defendants. Defendants are granted leave to file a renewed motion to seek summary judgment and address the effect of the Dismissal Order on Plaintiff's claims. Defendants have fifteen (15) days to file the renewed motion. The normal briefing schedule set forth under LR 7-2(e) will apply to Defendants' renewed motion.

It is further ordered that Plaintiff's motion to strike (dkt. no. 38) is denied.

The Clerk is directed to enter judgment in favor of Defendants John Tatro, Neil Rombardo, and Travis Lucia.

DATED THIS 19th day of March 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE